FILED

2010 Oct-26  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **BELINDA G. REEVES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Case No.:  1:09-CV-1685-VEH** |
| | ) |
| **COOSA VALLEY YOUTH** | ) |
| **SERVICES,** | ) |
| | ) |
| **Defendant.** | ) |

_____

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Belinda Reeves ("Ms. Revees") brings this job discrimination action against Defendant Coosa Valley Youth Services ("CVYS") pursuant to "42 U.S.C. § 1981 . . . by and through  § 1983, on the basis of race."  (Doc. 19 ¶ 1).  Pending before the court is CVYS's Motion to Dismiss Or, in the Alternative, Motion for a Judgment on the Pleadings (Doc. 31) (the "Motion"), filed on September 10, 2010. In the Motion, CVYS seeks an Eleventh Amendment immunity dismissal on the basis that it "is an arm of the state and has not consented to the lawsuit." (Doc. 31 at 4).

On September 21, 2010, Plaintiff filed her opposition to the Motion (Doc. 32), and on September 29, 2010, CVYS followed with its reply.  (Doc. 34).  For the

reasons explained below, the Motion is **DENIED**.

## II.    STANDARD

Because CVYS has already filed an answer (Doc. 23), the court analyzes the

potential dismissal of Ms. Reeves's complaint pursuant to Rule 12(c), which states:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are
> closed--but early enough not to delay trial--a party may move for
> judgment on the pleadings.

Fed. R. Civ. P. 12(c).

As explained by the Eleventh Circuit in *Cannon v. City of West Palm Beach*,

250 F.3d 1299 (11th Cir. 2001):

> We review a judgment on the pleadings *de novo*. *See, e.g.,*
> *Mergens v. Dreyfoos*, 166 F.3d 1114, 1116-17 (11th Cir. 1999).
> Judgment on the pleadings is appropriate <u>where there are no material</u>
> <u>facts in dispute and the moving party is entitled to judgment as a matter</u>
> <u>of law</u>. *Id.* at 1117.  We must accept the facts alleged in the complaint
> as true and view them in the light most favorable to the nonmoving
> party. *Id.*

*Cannon*, 250 F.3d at 1301 (emphasis added).

## III.    ANALYSIS

The focus of the parties' dispute is whether CVYS is, indeed, an arm of the

State of Alabama in the context of this case.  (*Compare* Doc. 31 at 3 ("There is no

dispute that CVYS is an arm of the State of Alabama.") *with* Doc. 32 at ("For the

reasons set forth below, Defendant's contention [that CVYS is an arm of the state] is

incorrect, and its motion is due to be denied.")).

In support of its Motion, CVYS relies heavily upon *Carter v. Coosa Valley Youth Services*, 378 So. 2d 1145 (Ala. Civ. App. 1979) and *Coosa Valley Youth Services Corp. v. Etowah County*, 460 So. 2d 1232 (Ala. 1984), and maintains that these decisions substantiate its arm of the state argument.  Having studied both of these cases, the court fails to see how either one clearly establishes that CVYS ever operates as an arm of the state, much less that it functions as an arm of the state when it disciplines an employee or fires an employee from one of its detention center schools.

For example, *Carter* involves an appeal by the Alabama Department of Industrial Relations (the "Department"), who was trying to assess unemployment compensation taxes against the Coosa Valley Regional Juvenile Center, Inc. (the "Center").   *Carter*, 378 So. 2d at 1146.   The Center had prevailed on the unemployment compensation tax issue at the state circuit court level.  *Id.*

The Alabama Court of Civil Appeals framed the discrete issue for it to address as:

> [W]hether the Coosa Valley Regional Center, Inc., though incorporated as a private non-profit corporation is, in fact, <u>a government instrumentality and thus exempt from assessment for unemployment compensation taxes</u> under Title 25, Chap. 4, Code of Alabama (1975).

*Carter*, 378 So. 2d at 1146 (emphasis added).  The Alabama Court of Civil Appeals ultimately held in *Carter* that:

> We find the trial court correct in looking through the form of a so-called private corporation to what was in substance the joint instrument of the cooperating governmental entities, the counties named in the certificate. It is clear, that the Center was their joint instrument for fulfilling their statutory governmental duty.

*Id.*, 378 So. 2d at 1147.  As a result, the lower court decision exempting the Center from paying unemployment compensation taxes to the Department was upheld.  *Id.*

While *Carter* does determine that the Center is a governmental instrumentality for the purpose of qualifying for an exemption from unemployment compensation taxes, the Center's exempt status does not turn upon its role as an arm of the state. Indeed, entirely absent from the opinion is any "arm of the state" language or similar terminology.  Instead, the import from *Carter* is that because CVYS fulfills a governmental purpose and is governmentally-funded, it is entitled to an exemption, regardless of whether it is considered to be a state, county, or some other hybrid governmental entity.

Moreover, to the extent that the *Carter* case even implies that the CVYS is a state governmental arm for the purpose of the Department's efforts to collect unemployment compensation taxes, it reveals nothing about CVYS's status when it hires, fires, or disciplines an employee.  As CVYS correctly recognizes in its reply,

4

"whether a defendant is an 'arm of the state', <u>first, it must be 'assessed in light of the</u> <u>particular function in which the defendant was engaged when taking the actions out</u> <u>of which liability is asserted.</u>'" (Doc. 34 at 1-2 (emphasis added) (citing *Ex parte Madison*, 1 So. 3d 980, 987 (Ala. 2008); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)). As the *Carter* decision is entirely unrelated to CVYS's treatment of its employees, the opinion cannot establish as a matter of law that CVYS is an arm of the state for the purpose of liability arising from allegedly engaging in discriminatory employment practices.

CVYS's reliance upon the *Coosa* decision to show that it is undisputedly an arm of the state is similarly misplaced. *Coosa* involves a dispute in which CVYS "sued Etowah County for non-payment on [certain amounts" relating to "the lodging of juveniles during the fiscal year[s] of 1978-1979. . . . [and] 1979-1980." *Id.*, 460 So. 2d at 1234.

In describing CVYS, the Supreme Court of Alabama explained:

The creation of Coosa Valley, and other child detention centers licensed by the Department of Youth Services (DYS), was authorized by § 44-3-1, Code 1975. These centers are public corporations. <u>They are the</u> <u>responsibility of a county, or, as in this case, several cooperating, or</u> <u>"member," counties</u>.

The relationships between the member counties and Coosa Valley are defined, in part, by resolutions and policies formally adopted by both. They are further defined by statute. Section 12-15-10, Code 1975,

> provides that the counties are responsible for paying charges for the lodging of juveniles at the center; section 11-1-10, Code 1975, authorizes and empowers counties to enter contracts <u>with agencies or institutions of the State.  Coosa Valley is such an institution</u>.  *See Carter v. Coosa Valley Youth Services*, 378 So.2d 1145 (Ala. Civ. App. 1979).

*Coosa*, 460 So. 2d at 1233 (emphasis added).  As CVYS contends, the "Coosa Valley is such an institution" language undeniably means that the Supreme Court of Alabama has determined that it is an arm of the state.  (Doc. 31 at 3).

However, the *Coosa* opinion, like the *Carter* one, does not contain any arm of the state analysis.  Relatedly, nothing in *Coosa* suggests that this language is, in any manner, instrumental to the outcome of the appeal.  Therefore, the "Coosa Valley is such an institution" statement is merely unpersuasive dictum, as opposed to a controlling principle of Alabama state law.  *See, e.g., Aron v. United States*, 291 F.3d 708, 716 (11th Cir. 2002) (Carnes, J., concurring) ("All that is said which is not necessary to the decision of an appeal given the facts and circumstances of the case is dicta.") (citation omitted); *Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996) ("Those passages from *Wideman* are clearly dicta, because they were in no way essential to *Wideman*'s holding of no liability.  <u>The law cannot be established by dicta</u>.") (emphasis added).

Moreover, there is other language from the *Coosa* ruling which seems to run counter to CVYS's arm of the state position and instead suggests that CVYS,

6

although subsidized by the state, ultimately remains the responsibility of its member

counties, and not the state:

> Coosa Valley chose, for valuable consideration, to enter into written contracts with the Department of Youth Services for the housing of youth.  The benefit of those contracts was to run, in part, to Etowah County to relieve it of financial responsibility imposed by § 12-15-10, Code 1975.  When read in light of § 44-1-28, which empowers DYS to provide subsidies for youth detention facilities, such as Coosa Valley, it is clear the Legislature intended that the State subsidize these facilities, but that the counties continue to have control of, and the ultimate financial responsibility for, their operation. The contracts between Coosa Valley and DYS, from which benefits run, in part, to Etowah County, certainly do not deviate from, or conflict, with, the Legislature's intent in that regard. Therefore, we agree with the trial court that these contracts are in harmony with the purposes of the above statute and are enforceable against Coosa Valley.

*Coosa*, 460 So.2d at 1234-35 (emphasis added); *see also Carter*, 378 So. 2d at 1147

("The counties named in the charter are the only participants and their inhabitant

children are those served by the Center.") (emphasis added); *Carter*, 378 So.2d at

1147 ("The trustees of the Center are appointed by the juvenile judge and governing

body of the participating counties and represent their interests and viewpoints.").

Furthermore, to the extent the *Coosa* case implies that CVYS is an arm of the

state in the context of any juvenile lodging contractual obligations, it still leaves

unanswered the question of whether CVYS operates as an arm of the state when the

alleged liability stems from its functioning as an employer.  Therefore, for all these

reasons, the court finds that neither *Carter* nor *Coosa* unquestionably establishes CVYS's arm of the state status.

In its reply, CVYS additionally maintains that it has adequately shown how it is an arm of the state under the Eleventh Amendment immunity factors recited in *Manders*:

> (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.

*Id.*, 338 F.3d at 1309 (citations omitted). However, in attempting to show satisfaction of these factors, CVYS unpersuasively reverts to citing to *Coosa* and *Carter* again. (*See, e.g.*, Doc. 34 at 3 (addressing *Manders*' first factor and referencing both *Coosa* and *Carter* as support); *id.* at 5 (discussing *Manders*' second factor and pointing to *Carter* as support)).  Additionally, with respect to the second factor, while CVYS is subject to certain "minimum standards, regulations, and license of the state[,]" *Carter*, 378 So. 2d at 1147, the extent to which this state involvement encompasses functions of the CVYS as an employer as opposed to as an entity responsible for housing juveniles, is ambiguous at best.  *See, e.g., Carter*, 378 So. 2d at 1147 ("The establishment of detention centers and the duty of the counties to provide them under the licensing authority of the Department of Youth Services is mandated by act of the legislature. Title 44, Chap. 1, Code of Alabama (1975).").

Also, the court agrees with Ms. Reeves that, in the absence of any affidavits or other evidentiary support, this court cannot fairly evaluate from where CVYS derives its funds or who would be responsible for paying a judgment against CVYS. (*See, e.g.*, Doc. 32 at 4 ("As a result, at this stage (motion to dismiss or judgment on the pleadings), Defendant fails the third test for Eleventh Amendment immunity as well."); *id.* at 5 ("As noted with regard to the third prong, there is simply nothing in the pleadings to indicate who is responsible for judgments against Defendant.")). Concomitantly, the court observes that the *Manders* decision was decided on a summary judgment record as opposed to simply on the pleadings.

Moreover, while CVYS indicates, concerning the third factor, that it "receives part of its funding from the State of Alabama" (Doc. 34 at 6), it fails to explain where its other funding originates or to point to a case in which receiving partial funding from the state means that the third prong of *Manders* favors a finding of Eleventh Amendment immunity. A comparable type of legal deficiency is true with respect to the fourth factor, as CVYS neglects to cite to any authority for the proposition that because "part of its yearly budget consists of funds from the State of Alabama, the State of Alabama is ultimately responsible for any judgments against CVYS." (Doc. 34 at 6). As this court has recognized on numerous previous occasions, the failure to reference any legal authority constitutes an undeveloped argument and waives the

9

issue.  *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

## IV.    CONCLUSION

As such, at this pleadings standpoint stage, CVYS has not met its burden in demonstrating that it is entitled to Eleventh Amendment immunity against Ms. Reeves's job discrimination lawsuit.  Accordingly, the Motion is **DENIED**.

**DONE** and **ORDERED** this the 26th day of October, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

10