# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **BELINDA G. REEVES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 1:09-CV-1685-VEH** |
| ) | |
| **COOSA VALLEY YOUTH** ) | |
| **SERVICES,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

### I.   INTRODUCTION

Plaintiff Belinda G. Reeves ("Ms. Reeves") initiated this job discrimination lawsuit arising under 42 U.S.C. § 1981 by and through § 1983 against Defendant Calhoun County Board of Education (the "BOE") on August 21, 2009. (Doc. 1). Defendant Coosa Valley Youth Services ("CVYS") was subsequently substituted for the BOE on October 1, 2009. (Doc. 9). Pending before the court is CVYS's Motion for Summary Judgment (Doc. 60) (the "Motion") filed on March 31, 2011. CVYS filed all of its supporting materials on this same date. (Docs. 61-67).

Ms. Reeves filed her opposition brief (Doc. 68) and evidence (Doc. 69) to the Motion on April 21, 2011. On May 2, 2011, CVYS followed with its reply. (Doc.

70). Accordingly, the Motion is now under submission, and, for the reasons explained below, is due to be granted in part and deferred in part.

## II. STANDARD

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## III. ANALYSIS

### A. Monetary Relief Sought by Ms. Reeves

CVYS raises a variety of issues on summary judgment, including the appropriateness of the monetary relief sought by Ms. Reeves. Specifically, CVYS

seeks a dismissal of Ms. Reeves's monetary claims for backpay, front pay,[1] and punitive damages. The court addresses these items below.

### 1.     **Backpay and Front Pay**

In responding to the Motion, Ms. Reeves "concedes that she is not entitled to backpay or front pay, based upon the adjudication by the Social Security Administration that she became totally disabled on or about August 2005." (Doc. 68 at 23). Therefore, with Ms. Reeves's consent, that section of CVYS's Motion is due to be granted.

### 2.     **Punitive Damages**

The parties dispute Ms. Reeves's entitlement to pursue punitive damages against CVYS under § 1981a(b)(1), which prohibits the recovery of punitive damages from "a government, a government agency, or a political subdivision[.]" More specifically, as § 1981a(a)(1) explains:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16], <u>and provided that the</u>

---

[1] "Prospective damages may be recovered when it is not feasible to reinstate the dismissed employee . . . . Prospective damages are sometimes referred to as 'front pay.'" *Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1433 n.6 (11th Cir. 1991) (citation omitted).

<u>complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section</u>, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

42 U.S.C. § 1981a(a)(1) (emphasis added).

Section 1981a(b)(1) then provides:

(1) Determination of punitive damages

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1). Thus, § 1981a expands the scope of recovery for Title VII claimants, and § 1981a(b)(1) appears only to be triggered when the complaining party cannot otherwise recover against a defendant under § 1981.

Because this action is brought under § 1981 by and through § 1983 and not under Title VII, the court finds it appropriate to turn to binding authority addressing the availability of punitive damages under those particular statutes. As summarized in the "**ANNOTATIONS AND COMMENTS**" section to the Eleventh Circuit's First Amendment/adverse employment action pattern jury instruction, which pertains to § 1983:

> The text of § 1983 does not provide for specific remedies. Therefore, it is necessary to look to the law as it has developed in the Eleventh Circuit and in other Federal Circuits. Historically, Plaintiffs have been able to recover compensatory damages (including pain and suffering), punitive damages, back pay, and front pay or reinstatement. Section 1983 has been interpreted, even prior to the Civil Rights Act of 1991, to permit the recovery of compensatory and punitive damages. The Supreme Court has held that punitive damages may be recovered when the defendant commits acts with reckless or callous disregard for the plaintiff's rights. *Smith v. Wade*, 461 U.S. 30, 51, 103 S. Ct. 1625, 1637, 75 L. Ed. 2d 632 (1983).
>
> A major limitation on the recovery of punitive damages is the Supreme Court's announcement that few awards exceeding a single digit ratio between punitive and compensatory damages will satisfy due process. *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) <u>Another limitation on the recovery of punitive damages in § 1983 claims is that they are not recoverable against a government entity</u>. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Gonzales v. Lee County Housing Authority*, 161 F.3d 1290, 1299 n.30 (11th Cir. 1998); *Garrett v. Clarke County Board of Education*, 857 F. Supp. 949, 953 (S.D. Ala. 1994); *Thornton v. Kaplan*, 937 F. Supp. 1441, 1450 (D. Col. 1996). Because many § 1983 claims are brought against government officials in their official capacities or against municipal entities themselves (often school boards), punitive damages are not recoverable in a large number of § 1983 claims. <u>The Civil Rights Act of 1991 has clarified that government entities may not be sued for punitive damages</u>. However, punitive damages are recoverable against all other defendants in § 1983 suits (*i.e.* individual capacity suits), and the statutorily mandated caps set out in § 102 of the 1991 Civil Rights Act, which apply in Title VII claims, do not apply to § 1983 claims. *See Thornton*, 937 F. Supp. at 1450 (noting that in Title VII claims, the 1991 Act also limits recovery of combined compensatory and punitive damages, depending upon the size of the employer).

*See* 11th Cir. Pattern Jury Instructions (Civ. Cases) § 1.1.1 at xlvi (2005) (emphasis

5

added).

Similarly, in reversing a district court on the issue of punitive damages under § 1983, the Eleventh Circuit has reasoned:

> In its post-trial opinion, the district court said that even if McDougall were not liable for punitive damages in his individual capacity, he was liable in his official capacity. The district court said that, while punitive damages are generally not allowed against a municipality, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), some distinction exists between a "municipal corporation" and a Florida Sheriff's Department. The district court held that *Newport* does not bar an award of punitive damages against the Sheriff in his official capacity.
>
> We do not agree with the district court's differentiation between a municipality and a Sheriff's Department. <u>We hold that *Newport*'s reasoning applies equally to a Sheriff's Department, thus barring a punitive damage award against Sheriff McDougall in his official capacity</u>. *See also Morris v. Crow*, 825 F. Supp. 295, 299 (M.D. Fla. 1993) (County Sheriff's Office, like municipalities, is immune from punitive damage claim under § 1983); *Quinones v. Durkis*, 638 F. Supp. 856, 859 (S.D. Fla. 1986) (Sheriff's Department only liable for damages if such damages would be recoverable <u>against a government entity such as municipality</u>).

*Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995) (emphasis added); *see also Walters v. City of Atlanta*, 803 F.2d 1135, 1148 (11th Cir. 1986) ("Given that the *Fact Concerts* Court's policy analysis [prohibiting the award of punitive damages under § 1983] <u>applies with equal force to section 1981 actions</u>, we conclude that the district court correctly disposed of Walters'[s] punitive damages claims against the City."

(emphasis added) (citations omitted)). Thus, the Eleventh Circuit has made it clear that punitive damages are not recoverable against a governmental entity under § 1983 and/or § 1981.

While no binding opinion from the Eleventh Circuit has addressed whether the CVYS is appropriately classified as a governmental entity under §§ 1983 and 1981, a review of Alabama case authority that has dealt with CVYS generally[2] convinces this court to conclude that CVYS is such an entity, and thus punitive damages are not recoverable against it.

For example, as the Supreme Court of Alabama explained the nature of CVYS in *Coosa Valley Youth Services Corporation v. Etowah County*, 460 So. 2d 1232 (Ala. 1984):

> The creation of Coosa Valley, and other child detention centers licensed by the Department of Youth Services (DYS), was authorized by § 44–3–1, Code 1975. These centers are public corporations. They are the responsibility of a county, or, as in this case, several cooperating, or "member," counties.
>
> The relationships between the member counties and Coosa Valley are defined, in part, by resolutions and policies formally adopted by both. They are further defined by statute. Section 12–15–10, Code 1975, provides that the counties are responsible for paying charges for

---

[2] To the extent that this state court authority is considered to be dicta, "[d]icta can sometimes be useful when it contains a persuasive analysis of a particular issue[.]" *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996).

> the lodging of juveniles at the center; <u>section 11–1–10, Code 1975, authorizes and empowers counties to enter contracts with agencies or institutions of the State. Coosa Valley is such an institution</u>. *See Carter v. Coosa Valley Youth Services*, 378 So. 2d 1145 (Ala. Civ. App. 1979).

*Etowah County*, 460 So. 2d at 1233-34 (emphasis added).

Additionally, the Alabama Court of Civil Appeals in *Carter* (cited with approval in *Etowah County*) affirmed the trial court's conclusion that the Coosa Valley Regional Center, Inc. (the "Center") (the predecessor entity to the CVYS) was "a governmental instrumentality, and thus exempt from assessment for unemployment compensation taxes under Title 25, Chap. 4, Code of Alabama (1975)." *Carter*, 378 So. 2d at 1146; *see id.* at 1147 ("We find the trial court correct in looking through the form of a so-called private corporation to what was in substance <u>the joint instrument of the cooperating governmental entities</u>, the counties named in the certificate." (emphasis added)); *id.* ("It is clear, that the Center was their joint instrument for fulfilling their statutory governmental duty."); (*see also* Doc. 39 at 4 ("Instead, the import from *Carter* is that because CVYS fulfills a governmental purpose and is governmentally-funded, it is entitled to an exemption, regardless of whether it is considered to be a state, county, or some other hybrid governmental entity.")).

A review of related statutory authority bolsters this court's governmental entity determination. For example, the Alabama statute under which CVYS is authorized

to be organized provides:

> <u>All counties and incorporated municipalities in this state</u> are hereby authorized and empowered to form regional, nonprofit, public corporations which shall provide for the temporary care and custody of youths who have been placed under the jurisdiction of a juvenile court.

Ala. Code § 44-3-2 (emphasis added). Similarly, a subsequent statutory section explains that the service area is limited to those counties who are members of the public corporation:

> The service area of such corporation shall be those <u>present and future Alabama counties who are members of a corporation</u> formed for the purpose of providing temporary care and custody to those children who are placed with the corporation by order of a judge exercising juvenile court jurisdiction or otherwise placed under the authority of existing law.

Ala. Code § 44-3-4 (emphasis added).

Further, nothing contained in Ms. Reeves's opposition persuades this court that CVYS should not be treated as a governmental entity. Therefore, the punitive damages portion of CVYS's Motion is due to be granted.

### B. Scope of Relief Remaining in Ms. Reeves's Case

In conceding that she was not entitled to receive any backpay or front pay from CVYS due to her total disability onset date of August 20, 2005, Ms. Reeves represented to the court that "[t]he remaining monetary damages, therefore, are punitive." (Doc. 68 at 26). Because Ms. Reeves has abandoned any claims for

backpay and front pay and this court has decided that punitive damages are not recoverable by her against CVYS, it now seeks clarification from Ms. Reeves regarding what remedies, if any, she contends remain to be tried in this litigation. Accordingly, the court finds it appropriate to defer ruling on the other parts of the Motion at this time and to enter a show cause order to determine the remaining scope of Ms. Reeves's lawsuit.

## IV.   CONCLUSION

Accordingly, for the reasons explained above, the Motion is due to be granted in part and otherwise deferred. The court will enter a separate order.

**DONE** and **ORDERED** this 20th day of September, 2011.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge